IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clavon D. Jones, #278661, ) | |
| ) | Civil Action No. 6:10-cv-2486-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| Capt. Thomas, Lt. Bradley, ) | |
| Warden A. Padula, Robert Wards, ) | |
| Jon Ozmint, and A/W Brooks, ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 31). The plaintiff, who is a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff claims that the defendants, all employees within the South Carolina Department of Corrections ("SCDC"), violated his Eighth Amendment rights when they failed to protect him from an altercation with his cell mate at Lee Correctional Institution ("LCI")[1]. Four of the named defendants work at LCI: Warden Padula, Associate Warden Brooks, Captain Thomas, and Lieutenant Bradley. Defendant Jon Ozmint is the former Director of SCDC, and Robert Wards[2] is the Director of Operations for SCDC.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

---

[1] The plaintiff has since been transferred from LCI and is now incarcerated at SCDC's Evans Correctional Institution.

[2] The defendant identifies himself as Robert Ward. The Clerk of Court is directed to change the caption of the case to reflect the correct spelling, and this defendant will be referred to hereinafter as Ward.

On February 28, 2011, the defendants filed a motion for summary judgment. By order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on March 30, 2011. The defendants filed a reply on March 31, 2011.

## **FACTS PRESENTED**

The plaintiff alleges in his complaint that he is disabled and in a wheelchair.[3] He claims that on February 19, 2010, his cellmate William Longs attacked him in their cell. He alleges that Longs had threatened him during prior months and that he had asked Capt. Johnson and Lt. Bradley to separate him from Longs. On January 25, 2010, the plaintiff filed a request to staff member requesting to be moved to a one-man cell, citing his handicap and his concern about defending himself should a cellmate attack him, but he failed to identify Longs or recite any of the threats Longs purportedly made to him (pl. resp. m.s.j., ex. A). Associate Warden Brooks responded that the plaintiff should take the matter up with his classification caseworker. The plaintiff did so, filing a request to be reclassified on February 18, 2010 (*id.*, ex. B). Again, in the second request to staff member, the plaintiff failed to identify Longs or recite any of the threats Longs purportedly made to him (*id.*). On February 20, 2010, the day after the altercation, the plaintiff filed a third request to staff member, in which he described the altercation: "Yesterday 2-19-10 me and my roommate got into it, my roommate hit me in the face. I tryed to fight him back but he throw me out of my wheelchair and hit me with my legs to the wheelchair putting me to sleep for about 1 min." (*id.*, ex. D).

According to the affidavits of Capt. Thomas and Lt. Bradley, at no time before February 19, 2010, were they aware of any problems between the plaintiff and inmate

---

[3] In his complaint, the plaintiff claims to be "paralyzed from the shoulders down" (comp. ¶10). However, in grievance forms he submitted with his response in opposition to summary judgment, the plaintiff states he can't move his "left side" (pl. resp. m.s.j., ex. A, B).

Longs (*see* Thomas aff. ¶ 9, Bradley aff. ¶ 5). Attached to Capt. Thomas' affidavit is an incident report prepared by LCI Officer Lighty, who responded to the altercation. Officer Lighty reported that she saw the plaintiff swing at Longs and ordered him to stop. Capt. Thomas arrived at the cell after the plaintiff and Longs had been separated and did not observe any physical injuries to either inmate. Both inmates were then escorted to the LCI medical unit. Officer Lighty charged the plaintiff with striking an inmate without a weapon (Thomas aff., ex. A).

After this charge was lodged against the plaintiff, he filed a step 1 grievance (#0560-10) on February 24, 2010, complaining of the charge against him and the fact that Longs was not charged (White aff., ex. A). This grievance was denied by the Warden, and the plaintiff filed a step 2 grievance, which remained pending final review when the instant complaint was filed (*id.* ¶¶3-4). According to the Warden's response to the grievance, the charge against the plaintiff for striking an inmate without a weapon was dismissed on March 10, 2010. The plaintiff also filed a separate step 1 grievance on February 24, 2010 (#0561-10), again complaining that he was attacked by Longs after asking for separation (*id.*, ex. A). This grievance was denied by the Warden, who noted that the plaintiff's classification caseworker and classification case manager stated that the plaintiff had not addressed a need for separation with either of them prior to the incident (*id.*). The plaintiff filed a step 2 grievance, which was also denied (*id.* ¶¶5-6)*.* The plaintiff failed to pursue grievance #0561-10 after its step 2 denial (*id.* ¶¶6-7).

The plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of an order directing the defendants to transfer him to an institution properly equipped for the handicapped. The defendants deny that they have violated the plaintiff's constitutional rights. They also raise affirmative defenses, including exhaustion of administrative remedies, respondeat superior, and qualified immunity.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365

(4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Exhaustion of Administrative Remedies*

The defendants argue that the plaintiff has failed to exhaust his administrative remedies. SCDC Inmate Grievance Branch employee Michelle White testifies that the plaintiff's Step 2 #0560-10 grievance was filed on April 20, 2010, and was still pending when she provided her affidavit on February 22, 2011 (White aff. ¶ 4). She provides no explanation for the fact that this grievance has not been resolved in 10 months. As this court questions the responsiveness of SCDC to this particular grievance, summary judgment is not appropriate on this ground.

### *Deliberate Indifference to Inmate's Safety*

The plaintiff alleges that the defendants failed to provide for his reasonable safety and that this failure constituted cruel and unusual punishment violating the Eighth Amendment to the United States Constitution. Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). *See also Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either

known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38.

As an initial matter and for context, the court notes that the plaintiff presents himself as severely handicapped, describing himself in his complaint as "paralyzed" from the "shoulders down" (comp. ¶10). However, in an earlier grievance to prison officials (pl. resp. m.s.j., ex. A), he limited his paralysis to his "left side," and, per the incident report referenced in and attached to Capt. Thomas' affidavit (Thomas aff., ex. A), the plaintiff reportedly took a swing at inmate Longs and was ultimately charged as the aggressor in the altercation. Clearly the plaintiff is not completely paralyzed. This revelation factors into the objective prong of the *Wilson* analysis cited above, as a completely paralyzed inmate would obviously need more protection than a less-disabled inmate. The fact that the plaintiff himself described his condition to prison officials prior to the altercation as being unable to move his left side, rather than being completely paralyzed from the shoulders down, allowed prison officials to reasonably conclude that he was not helpless and in immediate need of protection. Nothing else in the record, except the plaintiff's own conflicting statements, suggests otherwise. Clearly the plaintiff has failed to show that his condition heightened his need for extra security by prison officials and that he was deprived of such extra security.

Moreover, the record reveals that the defendants were unaware of any risk inmate Longs posed to the plaintiff, regardless of his condition. While deliberate indifference to an inmate's safety needs is actionable under Section 1983, the deliberate indifference must relate to a known, specific risk of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Both Capt. Thomas and Lt. Bradley testify in their affidavits that they were unaware that inmate Longs was a threat to the plaintiff. A careful review of the two grievances filed by the plaintiff prior to the altercation reveals that they are not in contradiction to this testimony. In the January 25th grievance and the February 18th follow-up, the plaintiff requests a one-man cell, and he cites as a basis for his request the *possibility* that a roommate could harm

him. Nowhere in either document does the plaintiff identify Longs or describe any threats purportedly made by him.

The plaintiff attaches various statements to his response in opposition to summary judgment, only one of which is relevant to the inquiry at hand. This purported statement of another inmate, James G. Blakely, reads as follows:

> I do not remember the exact date but I do remember inmate Clavon D. Jones speaking with Lt. Bradley concerning separating himself and his cellmate, William Longs. I did not hear all the conversation because they were speaking when I came up. Inmate Jones said, "My roommate keep threaten me and I would appreciate if you move one of us." I did not hear Lt. Bradley response because I walked off.

(Pl. resp. m.s.j., doc. 34-4 at p.1). The court dismisses this statement as unreliable hearsay. The statement is not notarized, and despite its purported date of February 20, 2010, the day after the altercation, the statement was produced more than a year later on March 30, 2011, and only in response to the defendants' motion for summary judgment, which framed the issue of notice that the statement attempts to address. Even if the statement were admissible, it lacks sufficient detail and clarity to refute the defendants' position that they were unaware of any risk inmate Longs posed to the plaintiff. Accordingly, the plaintiff has failed to respond with the requisite proof to survive summary judgment.

***Respondeat Superior***

The plaintiff names Ozmint and Ward as defendants but makes no factual allegations against them whatsoever. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional

injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. Based upon the foregoing, any claim against these defendants fails.

### *Qualified Immunity*

Lastly, the defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because

government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 31) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

April 20, 2011

Greenville, South Carolina